## APPEAL OF CARTER MEDICINE CO.

Docket No. 3791.   Submitted August 26, 1925.   Decided December 21, 1925.

The inclusion in invested capital for the year 1918 of certain expenditures for advertising made between 1880 and 1910 and charged to expense, disallowed.

*Walter S. Orr, Esq.*, for the taxpayer.
*Ellis W. Manning, Esq.*, for the Commissioner.

Before MARQUETTE and MORRIS.

This appeal is from the determination of a deficiency in income and profits taxes for the year 1918 in the amount of $1,247.46.

The question involved is whether there should be included in invested capital, as earned surplus, a portion of the advertising expense incurred over a series of years in the development of good will.

### FINDINGS OF FACT.

The taxpayer is a New York corporation. It was organized in 1880, with an issued capital stock of $20,000 par value, all of which was closely held. Its business consisted of the manufacture and sale of proprietary medicines, its principal product being " Carter's

Little Liver Pills." All advertising expense, since the organization of the company, has been charged on the books to current expense. The annual sales and advertising expense were as follows:

| Year. | Annual sales. | Advertising expense. | Year. | Annual sales. | Advertising expense. |
|---|---|---|---|---|---|
| 1880 | $17,802.80 | $23,289.97 | 1905 | $492,359.55 | $196,785.79 |
| 1881 | 36,086.99 | 14,013.16 | 1906 | 465,183.22 | 221,213.15 |
| 1882 | 68,193.09 | 14,570.38 | 1907 | 456,233.30 | 214,743.85 |
| 1883 | 86,982.88 | 14,695.88 | 1908 | 424,381.20 | 140,091.41 |
| 1884 | 112,717.76 | 17,072.62 | 1909 | 433,939.55 | 141,259.16 |
| 1885 | 140,885.95 | 41,013.36 | | | |
| 1886 | 192,589.32 | 51,369.78 | Total | 12,351,750.20 | 5,292,050.76 |
| 1887 | 265,351.34 | 54,200.72 | | | |
| 1888 | 337,668.50 | 61,978.58 | 1910 | 424,370.64 | 148,358.76 |
| 1889 | 411,133.17 | 90,318.97 | 1911 | 473,671.15 | 194,893.30 |
| 1890 | 481,291.36 | 250,051.66 | 1912 | 455,160.33 | 164,813.17 |
| 1891 | 504,538.65 | 219,340.83 | 1913 | 455,611.79 | 151,630.38 |
| 1892 | 539,277.00 | 236,505.39 | 1914 | 414,352.77 | 139,882.38 |
| 1893 | 540,190.25 | 234,200.84 | 1915 | 409,081.62 | 118,866.62 |
| 1894 | 548,063.31 | 283,676.05 | 1916 | 452,329.09 | 171,760.41 |
| 1895 | 564,485.40 | 198,123.17 | 1917 | 457,881.61 | 248,156.73 |
| 1896 | 611,119.40 | 362,773.69 | 1918 | 484,093.70 | 229,795.78 |
| 1897 | 596,706.06 | 244,909.96 | 1919 | 568,200.01 | 138,599.62 |
| 1898 | 589,337.45 | 242,836.74 | 1920 | 570,125.47 | 164,430.32 |
| 1899 | 591,594.06 | 271,710.63 | 1921 | 502,187.38 | 170,463.33 |
| 1900 | 601,946.50 | 308,109.43 | 1922 | 669,946.28 | 197,201.02 |
| 1901 | 598,151.66 | 304,998.71 | 1923 | 743,106.65 | 219,758.64 |
| 1902 | 563,494.07 | 280,565.28 | | | |
| 1903 | 552,578.37 | 301,687.59 | Total | 7,095,114.68 | 2,458,610.48 |
| 1904 | 527,428.14 | 275,944.02 | | | |

## DECISION.

The determination of the Commissioner is approved.

## OPINION.

Morris: The taxpayer seeks to capitalize part of its advertising expenses charged to cost of sales over the years 1880 to 1910, and to have the amount of $1,000,000 included in earned surplus for purposes of invested capital. It treated the entire advertising expense, throughout its history, as a charge against the cost of its sales. It looks back over the past history and, selecting the year 1910 as the time when an increase in advertising expense did not materially result in increase in sales, contends that by that year the saturation point had been reached, after which all future advertising expense resulted only in maintaining sales but not increasing them. The taxpayer then computes the aggregate advertising expense from 1910 to 1923 to be 34½ per cent of its aggregate sales during that period, and, applying that percentage to the aggregate sales from 1880 to 1910, finds an aggregate amount of advertising expense, in excess of the 34½ per cent, of about $1,000,000.

The argument is ingenious but it is of little assistance in a determination of the earned surplus as it stood at 1918. No evidence whatsoever was adduced regarding the earnings of the taxpayer

for any one of the years from 1880 to 1923. We are not advised whether there were earnings or losses. Earnings are one of the criteria of the existence of good will, but we can not say that good will had an actual existence in the form of an earned surplus, merely upon data of sales and advertising expense. In addition, it does not at all follow that the advertising expense of a given year would have a necessary resultant in the sales of that given year.

Expense for advertising may be wisely or unwisely incurred, but the mere amount has little significance. For illustration, in 1889 the taxpayer spent $90,000 and had sales of $411,000. In 1890 it increased its advertising expense by $160,000, with an increase in sales of but $70,000, while in the year following it reduced its advertising expense about $30,000, as compared with 1890, and its sales increased over that year to the extent of over $20,000. In 1921, with advertising expense of $170,000, the sales were $500,000, yet in 1922, with an increase in advertising expense of but $27,000, sales jumped $168,000, and in 1923 a further increase in expense of less than $20,000 resulted (if advertising can be said to be the cause) in an increase of $75,000 in sales. Comparisons might be made *ad infinitum*, but the apparent fact is that the saturation point, as the taxpayer designates it, had not been reached in 1910 or in any other definitely ascertainable year.

The taxpayer was manufacturing not only " Carter's Little Liver Pills " but other articles as well, and, although the evidence was to the effect that the largest part of the advertising expense was in connection with particular pills, yet the absence of more explicit evidence showing the separation makes it impossible to determine the extent to which the expense was incurred solely in the development of that trade-mark or name.

However, we desire to particularly emphasize that it is the year 1918 with which we are here concerned and not the year 1910. Even if we found an earned surplus to exist in 1910 to the extent of $1,000,000, which was not apparent upon the taxpayer's books, we can not say, in the absence of evidence as to earnings and balance sheets, that such earned surplus still existed to be included in the invested capital of 1918.